**In re Michelle Sharlene McCOY.**

No. 13–01–319–CV.

Court of Appeals of Texas,
Corpus Christi.

June 28, 2001.

Rehearing Overruled Aug. 16, 2001.

Rene O. Oliveira, Roerig, Oliveira & Fisher, Brownsville, for relator.

Katie Pearson Klein, Dale & Klein, L.L.P., Rogelio Ibanez, Law Office of Roy Ibanez, McAllen, for real party.

Before Justices DORSEY, HINOJOSA, and RODRIGUEZ.

## OPINION

DORSEY, Justice.

Relator, Michelle Sharlene McCoy requests this Court to issue a writ of mandamus directing the 92nd Judicial District Court of Hidalgo County to dismiss cause no. F–534–01–A because a proceeding concerning the same matters is currently pending in a court in Arkansas. Relator argues that the Hidalgo County court is without jurisdiction to entertain this matter. Along with her petition for mandamus relief, relator moved the Court to stay all proceedings in the trial court pending our ruling on the mandamus action. We granted her motion, and on May 28, 2001, this Court stayed the proceedings and ordered the real party in interest, Michael William McCoy, to file a response to relator's petition. We now conditionally grant the writ.

### Background

Relator and real party in interest are former spouses who have two minor children. They are United States citizens who lived most of their married life in Texas, but in 1996, moved to the foreign state of Qatar to accommodate Michael's job as a petroleum engineer. Qatar is a Persian Gulf country located off the coast of Saudi Arabia. The family lived there together until October 1999, when relator took the children and moved to Arkansas where her parents were living.

Shortly after moving to Arkansas with the children, relator filed suit in an Arkansas court seeking divorce, maintenance and child support. Michael traveled to Arkansas shortly after the suit was filed, and was personally served with citation in that suit while there. While Michael has continually disputed its jurisdiction, the Arkansas court has issued temporary orders concerning the children and has affirmatively asserted its personal and subject

matter jurisdiction over the suit. At the time relator filed her petition with this Court, the suit in Arkansas was set to go to trial beginning May 16, 2001.[1]

The same month that relator filed suit in Arkansas, Michael filed suit in Qatar. Almost a year later, in October 2000, the Qatari court entered a decree that granted the parties a divorce but deferred ruling on the child custody matters on grounds that Texas was a more appropriate forum for that. Then, in February 2001, Michael filed suit in Hidalgo County seeking custody of the children, division of marital property and judicial recognition of the Qatar divorce decree.

Relator moved the Hidalgo County court for a legislative continuance. The court denied her request, holding that Michael and the children would suffer irreparable harm if it were granted. Relator also moved the court to dismiss on the basis that it lacked jurisdiction. The court denied her motion, and instead issued an order granting to Michael the right to immediate possession of the children. Michael has, apparently, not taken possession of the children pursuant to those orders. He instead obtained temporary visitation rights through the Arkansas court. The Hidalgo County proceeding was set to go to trial this month, but was prevented from going forward by this Court's stay order.

Relator requests this Court to issue a writ of mandamus compelling the Hidalgo County court to either (1) dismiss the case for lack of jurisdiction, and/or (2) grant her request for a legislative continuance. We conditionally grant the requested writ because we find that the Hidalgo County court had no jurisdiction to entertain this initial child custody determination under the Texas version of the Uniform Child Custody Jurisdiction Act ("UCCJA"). *See* TEX.FAM.CODE ANN. § 152.101–152.317.

## ANALYSIS

First, because the issue will be moot in four days, we do not rule on relator's complaint that the trial court abused its discretion by denying her request for a legislative continuance. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 30.003 (Vernon 1997). Generally, when properly requested, the trial court has no discretion to refuse a litigant's request for a legislative continuance. *See* TEX.CIV.PRAC. & REM CODE ANN. § 30.003(b) (Vernon 1997); *Gov't. Services Ins. Underwriters v. Jones*, 368 S.W.2d 560 (Tex.1963); *but see Waites v. Sondock*, 561 S.W.2d 772, 774 (Tex.1977) (carving out an exception when granting of the continuance will cause irreparable injury). A legislative continuance lasts until thirty days after the date on which the Legislature adjourns. TEX.CIV.PRAC. & REM.CODE ANN. § 30.003.

Monday, May 28, 2001, was the last day of the 77th Legislative Session in Texas. Thus, relator's entitlement to a legislative continuance, if any, would exist only through June 28, 2001—thirty days after May 28. Even without the continuance, all proceedings in the Hidalgo County court have been stayed by this Court's order. Because our opinion is issued herewith on June 28, 2001, a ruling on the trial court's denial of relator's request for the legislative continuance is unnecessary because the issue has become moot. We turn to the remaining issues in relator's petition.

## AVAILABILITY OF MANDAMUS RELIEF

As a preliminary matter, we must first address the question of whether

---

1. We have not been advised of the status of that trial, but do not believe it could change

our disposition of this mandamus proceeding.

mandamus is the appropriate remedy. Generally, mandamus relief is only available when the petitioner can show (1) the trial court committed a clear abuse of discretion or the violation of a duty imposed by law and (2) that the petitioner has no other adequate remedy. *See Walker v. Packer,* 827 S.W.2d 833, 839–40 (Tex.1992). "As the name implies, extraordinary writs issue only in situations involving manifest and urgent necessity and not for grievances that may be addressed by other remedies." *Holloway v. Fifth Court of Appeals,* 767 S.W.2d 680, 684 (Tex.1989) (internal quotes omitted). When a direct appeal of the order at issue would provide an adequate remedy, mandamus relief is not authorized. *In re The Dallas Morning News, Inc.,* 10 S.W.3d 298, 308 (Tex.1999). The Texas Supreme Court has explained that the remedy of direct appeal is generally adequate even though it involves delay and more expense than obtaining an extraordinary writ. *In re Masonite Corp. .,* 997 S.W.2d 194, 197 (Tex.1999). "But on rare occasions an appellate remedy, generally adequate, may become inadequate because the circumstances are exceptional." *Id.* We hold that this mandamus proceeding involves such exceptional circumstances.

■ While direct appeal is generally an adequate remedy for a court's improper assertion of subject matter jurisdiction, *see Bell Helicopter Textron, Inc. v. Walker,* 787 S.W.2d 954, 954–55 (Tex.1990), Texas courts have held that when a Texas court has asserted jurisdiction over a child custody matter in contravention of the UCCJA, mandamus is appropriate regardless of whether the petitioner can show he has no adequate remedy by appeal because of the "unique and compelling circumstances" involved. *See Geary v. Peavy,* 878 S.W.2d 602, 603 (Tex.1994); *In re Alley,* 1 S.W.3d 268, 270 (Tex.App.—Texarkana 1999, orig.

proceeding); *In re Lambert,* 993 S.W.2d 123, 127 (Tex.App.—San Antonio 1999, orig. proceeding); *In re Jeffries,* 979 S.W.2d 429, 433 (Tex.App.—Waco 1998, orig. proceeding); *In re Powers,* 974 S.W.2d 867, 869 (Tex.App.—Houston [14th Dist.] 1998, orig. proceeding); *cf. Proffer v. Yates,* 734 S.W.2d 671, 671–72 (Tex. 1987) (holding mandamus appropriate to compel venue transfer in suit affecting the parent-child relationship). *But see Hughes v. Black,* 863 S.W.2d 559, 561 (Tex. App.—Waco 1993) (orig.proceeding) (finding mandamus not appropriate because appeal was adequate remedy). We agree with that approach. As the Texas Supreme Court noted in *Proffer v. Yates,* "Justice demands a speedy resolution of child custody and child support issues." *Proffer,* 734 S.W.2d at 673. The remedy of direct appeal "is frequently inadequate to protect the rights of parents and children to a trial in a particular venue." *Id.*

■ Also, all orders entered by the Hidalgo County court in this matter arguably are void because the court lacks subject matter jurisdiction. *See State ex rel Latty v. Owens,* 907 S.W.2d 484, 485 (Tex. 1995); *In re Powers,* 974 S.W.2d at 869 (holding temporary orders entered by court without jurisdiction under the UCCJA void). Mandamus has been traditionally the appropriate remedy when a trial court enters a void order. *Accord In re Southwestern Bell Telephone Co.,* 35 S.W.3d 602, 605 (Tex.2000). This principle is especially pertinent to child custody cases where multi-faceted, detailed temporary orders are routinely granted during the pendency of the cause. *Cf.* Tex.Fam. Code Ann. § 105.001 (Vernon Supp.2001). Such orders are not subject to interlocutory appeal. *Id.* § 105.001(e); *Craft v. Craft,* 580 S.W.2d 814, 815 (Tex.1979). It would be a tremendous burden on the litigants to be forced to comply with tem-

porary orders regarding such matters as child support, child visitation and temporary child custody entered by a court that has no jurisdiction over the matter, especially when contradictory orders have been entered by a court in another state.

█ Finally, mandamus is appropriate when one court directly interferes with the jurisdiction of the other. *See Abor v. Black,* 695 S.W.2d 564, 567 (Tex.1985); *Flores v. Peschel,* 927 S.W.2d 209, 211 (Tex.App.—Corpus Christi 1996) (orig.proceeding). In this case, the court in Arkansas and the court in Hidalgo County have issued orders in direct contradiction of one another regarding the temporary custody and the visitation of the McCoy's minor children. Both seek to finally adjudicate those issues. Certainly the contradictory orders issued by each court directly interfere with the jurisdiction of the other. That conflict is another reason this case presents facts sufficiently compelling to justify this Court's granting extraordinary relief. Accordingly, we hold mandamus is the appropriate remedy to compel a court to dismiss a case over which it has no subject matter jurisdiction under the Texas UCCJA. *Cf. Geary,* 878 S.W.2d at 603.

## JURISDICTIONAL PRINCIPLES
### UNDER THE UCCJEA

█ This conflict is governed by the Texas version of the Uniform Child Custody and Jurisdiction and Enforcement Act ("UCCJEA"). *See* TEX.FAM.CODE ANN. § 152.101–152.317 (Vernon Supp.2001). The UCCJEA is the successor statue to the Uniform Child Custody Jurisdiction Act ("UCCJA"), The UCCJEA was designed to remedy complaints in the original Act, but the general objectives are the same. *Phillips v. Beaber,* 995 S.W.2d 655, 659, 661 n. 2 (Tex.1999). The UCCJA was designed to address problems associated with the growing number of custody disputes between geographically separated parents. *Id.* Its primary concern was the refusal of many courts to accord finality to custody decrees issued by other states, resulting in frequent relitigation of custody judgments, often to the child's detriment. *Id.* Some of the stated purposes of the UCCJA were to:

(1) avoid jurisdictional competition and conflict with courts of other states in matters of child custody;

(2) promote cooperation with the courts of other states so that a custody decree is rendered in that state which can best decide the case in the interest of the child;

(3) assure that litigation concerning the custody of a child take place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state;

(4) discourage continuing controversies over child custody;

(5) deter abductions and other unilateral removals of children undertaken to obtain custody awards.

UNIF.CHILD CUST.JURIS.ACT. § 2.01 (1968). Texas adopted the UCCJA, with modifications in 1983, and by the end of that year, all fifty states and the District of Columbia had adopted some version of the model UCCJA. *Phillips,* 995 S.W.2d at 659.

In 1997, the National Conference of Commissioners on Uniform State Laws adopted the UCCJEA in an effort to rectify shortcomings perceived in the UCCJA. The new UCCJEA, adopted in Texas in 1999, actually resembles the version of the UCCJA originally adopted in Texas. *Phil-*

*lips,* 995 S.W.2d at 659 n. 2. At any rate, the Texas UCCJEA controls disposition of this case.

### 1. JURISDICTION UNDER THE TEXAS UCCJEA

Under Texas's version of the UCCJEA, Texas has jurisdiction to make an "initial child custody determination"[2] *only* if:

(1) this state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

(2) a court of another state does not have jurisdiction under Subdivision (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum ... and:

(A) the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

(B) substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;

(3) all courts having jurisdiction under Subdivision (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child ...; or

(4) no court of any other state would have jurisdiction under the criteria specified in Subdivision (1), (2), or (3).

TEX.FAM.CODE ANN. § 152.201(a) (emphasis added) (Vernon Supp.2001). Section 152.201(a) is the exclusive means by which a Texas court has jurisdiction over an initial child custody determination. *Id.* § 152.201(b).

 The first issue we must resolve is whether Texas has jurisdiction under section 152.201(a). We hold it does not. To make that determination, we address each subdivision of 152.201(a), in turn, to see if any provision confers jurisdiction on the Texas court.

Under the first part of subdivision (1), Texas may exercise jurisdiction if Texas is the home state of the child on the date of the commencement of the proceeding. *Id.* § 152.201(a)(1). Texas does not have jurisdiction under this section. Texas clearly was not the home state of the children in February of 2001, when Michael filed suit in Texas. "Home state" is defined to mean the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. *Id.* § 152.102(7). In February of 2001, the children had been living in Arkansas with their mother for well over a year. Thus, Texas was not the home state at that time; Arkansas was.

The second part of subdivision (1) also fails to confer jurisdiction upon Texas. Under that provision, Texas would have jurisdiction if it had been the home state within six months before the commencement of the proceeding and the child is absent from Texas but a parent or person acting as a parent continues to live in Texas. *See id.* § 152.201(a)(1). Texas was not the children's home state at any time

---

**2.** "Initial determination" means the first child custody determination concerning a particular child. TEX.FAM.CODE ANN. § 152.102(8) (Vernon Supp.2001). Generally, a court that

has jurisdiction to make an initial child custody determination also has exclusive continuing jurisdiction over the child custody matter. *See id.* § 152.202.

during the six months prior to February 2001, when Michael filed his suit. Moreover, neither parent continued to live in Texas. Thus, the second part of section 152.201(a)(1) did not confer jurisdiction on the Texas court. *See id.*

. Next, Texas did not have jurisdiction under subdivision (a)(2). *See id.* § 152.201(a)(2). Under that subdivision, Texas would have jurisdiction if a court of no other state had "home state" jurisdiction, or if a court of the home state of the child had declined to exercise jurisdiction on the ground that Texas is the more appropriate forum, along with certain other requirements. *Id* . § 152.201(a)(2). At first blush, this subdivision would seem to confer jurisdiction on the Texas court because the Qatari court, which was the home state when both the Qatari suit and the Arkansas suit were filed, declined to exercise jurisdiction on the ground that Texas was the more appropriate forum.[3]

■■■ However, the operative date for determining whether Texas has jurisdiction is not the date that the Qatari suit was filed. Nor is it the date that the Arkansas suit was filed. Rather, the operative date for determining whether *Texas* has jurisdiction is the date the suit was filed *in Texas*. Suit was not filed in Texas until February of 2001, over a year after the children moved to Arkansas with relator. In February of 2001, Arkansas had become the home state because the children had lived there for the preceding six months with their mother.

**3.** Relator has filed with this Court a reply brief suggesting that Qatar was not the home state on the date she filed suit in Arkansas. The documents filed with this Court in the context of this mandamus proceeding indicate that Qatar was, indeed, the home state of the children at the time she filed the suit in Arkansas. However, that issue is not squarely before this Court, and we do not make a

Finally, the Texas court does not have jurisdiction under the remaining two subdivisions of section 152.201(a). Under subdivision (3), Texas would have jurisdiction only if all courts having jurisdiction had declined to exercise jurisdiction on the ground that a Texas court was the more appropriate forum to determine the custody of the child. *Id.* § 152.201(a)(3). The courts exercising jurisdiction were the Arkansas and the Qatari courts. The statute requires that both of those courts declined jurisdiction in favor of Texas in order to confer jurisdiction on the Texas court. While the Qatari court did, in fact, decline jurisdiction in favor of Texas, the Arkansas court had affirmatively asserted jurisdiction at the time Michael filed his suit in Hidalgo County. Thus, that subdivision does not confer jurisdiction on the Texas court because one of the courts that was exercising jurisdiction over the matter did not decline to exercise jurisdiction on grounds that Texas was the appropriate forum.

Similarly, under section 152.201(a)(4), Texas would have jurisdiction only if no court of any other state would have jurisdiction under any section of 152.201(a). *Id.* § 152.201(a)(4). As we have discussed, Arkansas had "home state" jurisdiction under section 152.201(a)(1) when Michael filed his suit in Texas. Thus, (a)(4) did not confer jurisdiction on a Texas court. *Id.*

### 2. OPERATIVE DATE FOR DETERMINING JURISDICTION

■■■ The Hidalgo County trial court recited detailed factual and legal findings

definitive ruling on it. Our analysis assumes Qatar was the home state at the time both the Arkansas and Qatari suits were commenced. Because it is not necessary to the disposition of this mandamus proceeding or our analysis, we do not rule that Qatar was the home state, but make that assumption for analytical purposes. Additional evidence could show that the Qatari court was not the home state.

that allow us to determine the error in its analytical approach. We see one central problem. The trial court seems to have used the date of November 21, 1999, as the date of "commencement of the proceeding" for purposes of determining whether Texas has jurisdiction. November 21, 1999, was the date that Michael filed suit in Qatar. We disagree with that approach. Rather, we find that under the clear language of the Texas UCCJA, the date for determining which state has jurisdiction is the date of commencement of the proceeding *in Texas*.

Section 152.201(a) refers to "the date of the commencement of the proceeding" as the point for determining which state has jurisdiction. TEX.FAM.CODE ANN. § 152.201(a)(1) (Vernon Supp.2001) (emphasis added). "Commencement" is defined as "the filing of the first pleading in a proceeding." *Id.* § 152.102(5). Undisputedly, the first pleading Michael filed in any Texas court concerning this matter was filed in February of 2001. Thus, the date that pleading was filed is the date for determining whether the provisions of section 152.201(a) confer jurisdiction on a Texas court. At that time, Arkansas had become the children's home state. Thus, Texas had no basis for asserting jurisdiction. Effectively, Michael's failure to file suit in Texas prior to Arkansas becoming the children's home state prevented the Texas courts from acquiring jurisdiction over this child custody proceeding.

3. INAPPLICABILITY OF SECTION 152.206

■ The trial court seems also to have relied on family code section 152.206 to confer jurisdiction on the Texas court. Section 152.206 states that Texas may not exercise jurisdiction if, at the time of the commencement of the proceeding, a proceeding concerning the custody of the child

has been commenced in a court of another state having jurisdiction substantially in conformity with this chapter. *See* TEX. FAM.CODE ANN. 152.206(a) (Vernon Supp. 2001). The trial court reasoned that because Arkansas was not exercising jurisdiction "in substantial conformity" with the Texas UCCJA provisions, it was not required to defer to the Arkansas court. That reasoning is flawed. By its plain language, that provision speaks to situations where a Texas court may *not* exercise jurisdiction; it does not *confer* jurisdiction. Rather, section 152.206 only may apply when Texas already has subject matter jurisdiction under section 152.201(a). *Cf. In re E.K.N.*, 24 S.W.3d at 591–92 (recognizing that initial subject matter jurisdiction is required before application of the "simultaneous proceeding" statute). As its title implies, the purpose of that statute is to deal with situations where a Texas court and a court of another state are both legitimately exercising jurisdiction at the same time .[4]

4. INAPPLICABILITY OF SECTION 152.207

■ Finally, the trial court also seems to have given weight to its finding that the Qatar court deferred jurisdiction to Texas under TEX.FAM.CODE § 152.207(a) (Vernon Supp.2001). However, the Qatari court did not have the power to confer jurisdiction on the Texas court because that "deferral of jurisdiction" was made *after* the Arkansas court gained home state status. Section 152.207(a) states:

A court of this state which has jurisdiction under this chapter to make a child custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that

4. The section is entitled "Simultaneous Proceedings."

a court of another state is a more appropriate forum....

*Id.* We agree the Qatari court could defer jurisdiction as described in section 152.207. The Texas UCCJA requires that the Qatari court is treated as if it were a court of a state of the United States. *See* TEX.FAM. CODE ANN. § 152.105 (Vernon Supp .2001). However, the deferral of the Qatari court could only confer superior jurisdiction on a Texas court if it was done under the circumstances described in section 152.201(a)(2) or (a)(3). That is, the Qatari court could only effectively defer its home state status to Texas if it was done prior to the time that Arkansas became the home state.

Michael was not without recourse. If he doubted the jurisdiction of the Qatari court, he could have brought a motion to request the Qatari court defer jurisdiction to Texas prior to the time that Arkansas gained home state status. Michael could have filed a separate suit in Texas within six months of the children moving to Arkansas, and requested the Qatari court to immediately defer jurisdiction to Texas. Then, under section 152.201(a)(2) or (a)(3), Texas would have had jurisdiction over this matter.

### CONCLUSION

Texas simply no longer had superior jurisdiction to Arkansas at the time Michael filed his suit in Texas. If Michael had filed suit in Texas while Qatar still maintained its status as "home state," Qatar's deferral to the Texas court would have made Texas the state with a superior right to jurisdiction. At that time, Arkansas had not become the home state, and Qatar was clearly the home state. However, because Michael waited to file suit in Texas until the children had lived in Arkansas for well over six months, Arkansas

achieved "home state" status during his delay.

We hold the "date of commencement of the proceeding," for purposes of section 152.201, must be the date of commencement of a proceeding in a *Texas* court. We find no provision that would allow the date of commencement to somehow "relate back" to the date that either Michael filed suit in Qatar, or the date relator filed suit in Arkansas. Thus, because Arkansas, and not Texas, was the home state on the date Michael commenced the proceeding in Texas, we hold the Texas court was without jurisdiction to make an initial child custody determination. Accordingly, we hold the trial court abused its discretion in denying relator's plea to the jurisdiction.

We conditionally grant relator's petition for writ of mandamus. Writ will issue only if the trial court fails, within ten days of this opinion, to (1) dismiss the action filed by Michael seeking an initial child custody determination, and (2) specifically vacate any and all orders entered in this matter pertaining to the custody and/or visitation of the children.