

# NUMBER 13-09-080-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**MARIO GILBERTO CANALES,** **Appellant,**

**v.**

**LIZBETH RIQUELME,** **Appellee.**

## On appeal from the County Court at Law No. 4 of Hidalgo County, Texas.

## MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Vela
### Memorandum Opinion by Justice Vela

This is an appeal from a final decree of divorce and trial court's order denying Mario Gilberto Canales's plea to the jurisdiction with respect to an initial custody dispute. Canales raises three issues on appeal, including a jurisdictional argument pertaining to the initial custody dispute, the division of community property, and the award of retroactive

child support. We lift the abatement order, reinstate the cause and affirm in part, and dismiss for lack of jurisdiction, in part.

## I. FACTUAL BACKGROUND

### A. The Texas Proceeding

Appellee, Lizbeth Riquelme, filed a petition for divorce against Canales in Hidalgo County on November 19, 2007. She sought custody of the couple's three children, M.G., M.J., and T.L. She also sought a just and right division of the marital property. Canales, who was not served until March 10, 2008, responded by filing a special appearance and a motion to dismiss the action pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), requesting the trial court to dismiss for lack of subject-matter jurisdiction over the initial child custody issues. *See* TEX. FAM. CODE ANN. §§ 152.001-.317 (Vernon 2008). The trial court denied Canales's special appearance and ruled that it had subject-matter jurisdiction with respect to the initial custody matters. Thereafter, the trial court conducted a final hearing and entered a decree of divorce on December 29, 2008.

### B. The Washington Proceeding

Canales filed a petition for divorce on March 6, 2008, in the state of Washington. On April 2, 2008, the Washington court entered temporary orders stating that the children were to be returned to Washington. The Washington court's order stated that it would determine custody once the children were returned to Washington and that the order would be subject to modification at "the UCCJEA conference." On May 29, 2008, Riquelme's Washington counsel filed a motion to dismiss the Washington proceeding. The Washington court signed an order delaying a ruling on the motion to dismiss pending the

2

outcome of "the appeal of the jurisdictional claim." The record reflects that the Washington court unsuccessfully attempted to communicate with the Texas court.

## C. Abatement

In a March 2010 abatement order, this Court determined that Washington was the proper state to determine the initial custody issues for reasons that we reiterate in our analysis of appellant's first issue. We ordered the Hidalgo County trial court to confer with the Washington court. On June 7, 2010, the trial court informed this Court that the Washington court had determined that Washington is the home state of the children and that it is the exclusive tribunal to determine all issues related to the custody of the children.

Thereafter, this Court asked the parties for a status update. Counsel for Canales suggests to this Court that his second and third issues are ripe for this Court's review. In the second issue, Canales urges that the trial court abused its discretion in dividing the community property. His third issue is that the trial court abused its discretion in ordering retroactive child support. Counsel for Riquelme informed this Court that he agrees with appellant's analysis and conclusion of the "factual situation and legal issues at bar." Both parties urge that we lift our previous abatement order and rule on the remaining two issues, which we do in this memorandum opinion.

## II. STANDARD OF REVIEW–JURISDICTION

First, we will reiterate our holding with respect to appellant's jurisdictional issue. As we previously stated in our abatement order, construction of the UCCJEA's home state provision, as codified in the family code, is a question of law that we review de novo. *Powell v. Stover*, 165 S.W.3d 322, 324 (Tex. 2005). Subject-matter jurisdiction may not

be waived or conferred by estoppel. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445 (Tex. 1993); *Seligman-Hargis v. Hargis*, 186 S.W.3d 582, 585 (Tex. App.–Dallas 2006, no pet.). The UCCJEA was intended to make the determination of jurisdiction straightforward and to deter abductions of children. *Powell*, 165 S.W.3d at 326.

### III. THE UCCJEA

The Texas Family Code prioritizes home-state jurisdiction and provides as follows:

(a) Except as otherwise provided in section 152.204, a court of this state has jurisdiction to make an initial child custody determination only if:

  (1) this state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

  (2) a court of another state does not have jurisdiction under Subdivision (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under Section 152.207 or 152.208, and:

    (A) the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

    (B) substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;

  (3) all courts having jurisdiction under Subdivision (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Section 152.207 or 152.208; or

  (4) no court of any other state would have jurisdiction under the criteria specified in Subdivision (1), (2), or (3).

4

(b)     Subsection (a) is the exclusive jurisdictional basis for making a child custody determination by a court of this state.

(c)     Physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child custody determination.

TEX. FAM. CODE ANN. § 152.201.

The family code defines "home state" as "the state in which a child lived with a parent . . . for at least six consecutive months immediately before the commencement of a child custody proceeding . . . ." *Id.* § 152.102(7). The word "lived" connotes physical presence. *Powell*, 165 S.W.3d at 326. In *Powell*, the supreme court explained that the Legislature used the word "lived" to avoid "complicating the determination of a child's home state with inquiries into the state of mind of the child or the child's adult caretakers." *Id.* (citing *Escobar v. Reisinger*, 133 N.M. 487, 64 P.3d 514, 517 (2003)). The UCCJEA suggests that the child's physical location is the central factor to be considered when determining the child's home state. *Id.* Further, section 152.201(a) is the exclusive jurisdictional basis for making a child custody determination by a court of this state. *Seligman-Hargis v. Hargis*, 186 S.W.3d at 585. We determine jurisdiction based upon the circumstances as they existed on the date that suit was filed. *See In re Burk*, 252 S.W.3d 736, 740 (Tex. App.–Houston [14th Dist.] 2008, orig. proceeding); *In re McCoy*, 52 S.W.3d 297, 304 (Tex. App.–Corpus Christi 2001, orig. proceeding).

## IV. APPLICATION

### A. Home State Jurisdiction With Respect to M.G. and M.J.

This case commenced when Riquelme filed her original petition in a Texas court on November 19, 2007. The evidence was undisputed that M.G. and M.J., the two older

children, lived in Washington from August 2004 through October 3, 2007. The record is unclear where the children resided from October 3, 2007, until Riquelme filed for divorce in November 2007. At the hearing, Riquelme testified that in May 2007, she moved to Texas with T.L., her youngest child, and stayed at the home of her sister and brother-in-law. At that time, the two older children remained in Washington. Riquelme claimed her intent was to establish residency in Texas. She further testified that she returned to Washington on June 15, 2007, and remained there until October 3, 2007. Thus, Riquelme was actually physically present in Texas with her youngest child only from sometime in May through June 15, 2007—a six-week period. When she returned to Washington, Canales, the children, and Riquelme stayed at the home the couple owned in Washington. Riquelme, in fact, did not dispute that the children had not been in Texas for six months prior to her filing the divorce action. At the hearing to determine jurisdiction, Canales introduced the affidavit of Brian Anderson, principal of Our Lady of Lourdes school in Vancouver, Washington. He averred that the oldest child had been enrolled in the pre-school program from September 5, 2006, through June 15, 2007. Both of the older children were also enrolled for the 2007/2008 school year. He also swore that both children attended school in Washington until October 2, 2007. Riquelme agreed that the children had not lived continuously in Texas for more than six months prior to filing the divorce and custody action.

In response, however, Riquelme points to: evidence of Canales's contacts in Texas; an incident that occurred in November 2007 where Riquelme testified that Canales forced her and the children out of the car in Monterrey, Mexico; the fact that the older children's passports were processed in Houston; the fact that the children had received

6

dental care from Riquelme's brother in McAllen, Texas; and the fact that Riquelme left Washington in May 2007 for purposes of permanently residing in Texas. She does not dispute, however, that the children had resided in Washington since 2004 or, in the case of T.L., the youngest child, since birth.

Riquelme urges that the above-cited evidence supports the Texas trial court's jurisdiction either under the "home state" or "significant connection" provisions of the UCCJEA. We disagree. The relevant time period is the six-month time period preceding November 19, 2007. While Riquelme testified that she left Washington in May 2007 to establish residency in Texas, it is undisputed that her two oldest children remained in Washington with their father. There is absolutely no evidence that Texas was the home state of any of the children at the operative time based on the standard set forth in *Powell*. *See* 165 S.W.3d at 328. Further, the evidence established that Washington was the home state of M.G. and M.J., the two older Canales children.

Riquelme argues primarily that she was a resident of Texas during the required six month period. However, she spent only about six weeks in Texas prior to filing the divorce action in November 2007, in addition to the time she was in Texas before filing the divorce petition. Nevertheless, her residency is of no import in determining the trial court's jurisdiction over the initial custody matter; rather it is the physical presence of the children that is determinative. TEX. FAM. CODE ANN. § 152.102(7); *Powell*, 165 S.W.3d at 328 (stating that the child's physical location is the central factor to be considered when determining a child's home state). Further, Riquelme's "significant connection" argument should not be applied to jurisdiction because it should be employed only when Texas is not the home state and it appears that no other state could assert home state jurisdiction. *In*

*re Oates*, 104 S.W.3d 571, 578 (Tex. App.–El Paso 2003, orig. proceeding). The UCCJEA provides that if a child has a home state, that home state has subject matter jurisdiction. *See* Tex. Fam. Code Ann. § 152.201(a). Here, Washington was the home state of M.G. and M.S., the two older children.

## B. Home State Jurisdiction With Respect To T.L.

With respect to the youngest child, T.L., we conclude that under the strict definition of "home state," neither Texas nor Washington was her home state. Pursuant to section 152.201(a)(2)(A) and (B), we look to whether the child *and* at least one parent had a significant connection with this state other than mere physical presence and substantial evidence is available concerning the child's care, protection, training and personal relationships. *Id*. § 152.201(a)(2)(A) and (B).

At the hearing, there was no evidence that T.L. had significant connections with the State of Texas. The evidence before the trial court was that Riquelme had a significant connection and a family support group in Texas. However, the only evidence introduced pertaining to T.L. was that she was born in Washington state and had lived there from birth, with the exception of family vacations, the time period that her mother was absent from Texas in an attempt to establish residency in Texas, and some time during October and November 2007 before her mother filed for divorce. We find that the Washington state was in the proper position to assert jurisdiction over the initial custody dispute regarding T.L. Canales's first issue is sustained.

## V. DIVISION OF COMMUNITY PROPERTY

By appellant's second issue, he argues that the trial court abused its discretion in dividing the couple's community property as it did. First, he argues that the trial court awarded two pieces of real property to Riquelme without explanation. The final judgment valued the community property at $580,000. The trial court awarded Riquelme the couple's residence in the State of Washington as well as a home the couple owned in Mexico. The court also awarded to Riquelme all of Canales's retirement account that was valued at $55,000, and required Canales to make the mortgage payment on the Washington home.

Trial courts have wide discretion in making a just and right division of marital property; we review a trial court's division for an abuse of discretion. TEX. FAM. CODE ANN. § 7.001 (Vernon 2006); *Murff v. Murff,* 615 S.W.2d 696, 698 (Tex. 1981); *Zorilla v. Wahid,* 83 S.W.3d 247, 252 (Tex. App.–Corpus Christi 2002, no pet.). The test for abuse of discretion is whether the trial court acted arbitrarily or unreasonably, or whether it acted without reference to any guiding rules or principles. *See Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex. 1990); *see also Lozano v. Lozano,* No. 13-08-00536-CV, 2009 WL 4882816, at *3 (Tex. App.–Corpus Christi Dec.17, 2009, no pet.) (mem. op.). A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support its decision. *Garza v. Garza,* 217 S.W.3d 538, 549 (Tex. App.–San Antonio 2006, no pet.); *see also Lozano,* 2009 WL 4882816, at *4. A "just and right" division does not require a trial court to divide the marital estate into equal shares. *Murff,* 615 S.W.2d at 698-99 & n. 1 (recognizing that community property need not be equally divided); *Schuster v. Schuster,* 690 S.W.2d 644, 645 (Tex. App.–Austin 1985, no writ). When dividing the marital

9

estate, a trial court has broad discretion to consider various factors including, but not limited to, disparities of incomes, earning capacities of the parties, financial obligations, fault in the breakup of the marriage, benefits which the party not at fault would have derived from a continuation of the marriage, education of each spouse, and the nature of the property to be divided. *Murff,* 615 S.W.2d at 698-99. As a reviewing court, we presume the trial court exercised its discretion properly. *Id.* at 699 (citing *Bell v. Bell,* 513 S.W.2d 20, 22 (Tex. 1974)).

First, we note that Canales was not present at the final hearing. His attorney informed the trial court that he was not there because circumstances beyond his control prevented him from being present. It does not appear that Canales attempted to continue the hearing until a time when he could be present. The evidence at the final hearing consisted solely of the examination and cross-examination of Riquelme.

At the hearing, Riquelme testified with respect to clothing, jewelry, and personal items that were still in the Washington house. She further indicated the couple's community property included furniture, television sets, toys, a home in Mexico, and a home in Washington. She valued the non-real property at roughly $20,000. She also valued some of the children's items at $4,500 and property located at the house in Mexico at $6,500. According to Riquelme, the couple's' vehicles were worth $47,600. She valued the Washington home at $400,000 and the one in Mexico at $100,000. They owned the house in Mexico outright and had received $23,600 in rentals. She indicated that they still owed $228,000 on the Washington home. She opined that the equity in the Washington property is $47,000. Riquelme also said that Canales had approximately $55,000 in his retirement account. There was evidence that Riquelme was not employed and had not been employed

10

outside the home during the marriage. Disparity in earning capacity is a factor weighing in favor of awarding a disproportionate share of the community property to the lower income earner. *See O'Carolan v. Hopper*, 71 S.W.3d 529, 532 (Tex. App.–Austin 2002, no pet.).

Ultimately, Riquelme asked the court to award her the Washington home, the home in Mexico and the retirement account. She asked the court to consider the fact that Canales owned portions of two ranches in Mexico as well as some offices, a shed and an apartment as his separate property in determining her award. On cross examination, counsel for Canales was unable to authenticate several exhibits regarding the various properties. Riquelme summed up her testimony by requesting "half of everything." She also explained that Canales owed her money for child and spousal support that had been ordered, but not paid.

In this instance, the burden was upon Canales to show that the division was so disproportionate that it was manifestly unjust or unfair. *Hedtke v. Hedtke*, 248 S.W. 21, 23 (Tex. 1923); *see also Trial v. Trial*, No. 04-05-00 448 CV, 2006 WL 1993772, at *1 (Tex. App.–San Antonio July 19, 2006, no pet.) (mem. op.). There was evidence before the court to support Riquelme's property valuation. Here, Canales did not avail himself of the opportunity to provide values on any of the property at the final hearing. *See Vannerson v. Vannerson*, 857 S.W.2d 659, 670 (Tex. App.–Houston [1st Dist.] 1993, writ denied) (noting that because appellant did not appear at trial, he presented no evidence concerning characterization of property); *LeBlanc v. LeBlanc*, 761 S.W.2d 450, 453 (Tex. App.–Corpus Christi 1988), *aff'd,* 778 S.W.2d 865, 865 (Tex. 1989) (stating that appellant did not avail himself of the opportunity to provide values on property); *see also Dean-Groff v. Groff*, No.

13-06-00085-CV, 2007 WL 3293540, at *4 (Tex. App.–Corpus Christi Nov. 8, 2007, no pet.) (mem. op.) (stating that where a party does not provide any value with respect to property, he may not complain on appeal of a trial court's lack of complete information). Thus, Canales is not in a position at this point to complain of the lack of information. Because the trial court was not required to make an equal disposition of the community property and there is nothing in the record showing that the trial court's ruling was manifestly unjust, we overrule appellant's second issue.

## VI. RETROACTIVE CHILD SUPPORT

By Canales's third issue, he urges the trial court abused its discretion by requiring him to pay Riquelme retroactive child support for a period in which Canales had possession of the children. The parties agree that the standard of review is abuse of discretion. Because the abuse of discretion standard is well known and we have iterated it earlier in this opinion, we will not reiterate it here.

The trial court signed temporary orders awarding child support in the amount of $2,250 per month from May 2007 through August 2008, for a total of $36,000. The record showed that the two older children were residing in Washington until October 2007, when Riquelme left Washington with all three of the children. Canales argues that he was required to pay Riquelme retroactive child support for five months in which the two older children had been with him. The record was very clear that T.L., the youngest child, resided with Riquelme at all times, both in Washington, and during the six-week period she was in Texas, and the time period after they left Washington in October. For part of the time in

12

question, Riquelme was living at the Washington house with the children, although she states that she was separated from Canales at that time. The child support was originally ordered at the hearing to be temporary, but was later incorporated into the final decree because Canales had not paid it. At the final hearing, counsel for Canales argued that he was entitled to a reduction for the time period that Riquelme and the children were living at the Washington residence. At the hearing, his counsel suggested he was owed child support for three months and, on appeal, he suggests five months.

Riquelme testified that, during the period when she returned to Washington, Canales paid all of the house bills and she received money from her mother so she could support herself. Riquelme testified that during this time appellant was providing for the "needs of the home." There was no specific evidence with respect to who supported the children during this period. Riquelme testified that she had received no support and was entitled to retroactive support in the amount of $36,000. The amount awarded was in accordance with the amounts dictated by section 154.009 of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 154.009 (Vernon 2008). We will not reverse the trial court in this discretionary matter based on the record that is before us. We overrule issue three.

## VII. CONCLUSION

The previous abatement ordered by this Court is lifted and the case is reinstated. Because Washington state was the home state of the three children, the Texas court does not have jurisdiction to make the initial custody determination. Thus, we do not have jurisdiction over the initial custody matters in this case, and we dismiss that portion of the

case for lack of subject matter jurisdiction.  We affirm the judgment with respect to the division of community property and the award of retroactive child support.


ROSE VELA
Justice


Delivered and filed the 18th
day of November, 2010.

14