2003-NMCA-047

64 P.3d 514

**Guadalupe ESCOBAR, Petitioner– Appellee,**

v.

**Christian Gerhardt REISINGER, Respondent–Appellant.**

No. 22,869.

Court of Appeals of New Mexico.

Jan. 13, 2003.

H.R. Quintero, Robinson, Quintero & Lopez, P.C., Silver City, NM, for Appellee.

F. Gene Gruber, Silver City, NM, for Appellant.

## OPINION

ALARID, Judge.

{1} Respondent–Appellant, Christian Gerhardt Reisinger (Father), appeals the trial court's determination that it had jurisdiction to determine custody of his minor child, (Child), and the trial court's award of temporary custody to Petitioner–Appellee, Guadalupe Escobar (Mother). As we explain below, the trial court erred by exercising jurisdiction when child custody proceedings were previously filed and pending in Child's home state, Missouri. Accordingly, we reverse.

### BACKGROUND

{2} Father and Mother were married in New Mexico in August 1998. They moved to Missouri shortly after the wedding. Mother became pregnant. Before the birth of Child, Father and Mother separated, and in April 1999 Mother moved from Missouri to New Mexico. Child was born in Silver City, New Mexico on May 29, 1999.

{3} After Mother's move to New Mexico, but prior to Child's birth, Father filed for dissolution of marriage in the Circuit Court of St. Charles County, Missouri. Following the birth of Child, Father filed a motion for temporary custody of Child. Mother, through Missouri counsel, entered a special appearance in the Missouri divorce proceeding to contest the sufficiency of service of process. The Missouri court overrruled Mother's objection to insufficient service of process. In November 1999, the Missouri court ordered Mother and Child to reside in Missouri. Mother moved to Missouri in November 1999 in order to comply with the Missouri court's custody orders. On January 10, 2000, the Missouri court entered a decree awarding Father custody, but allowing Mother visitation. Mother appealed. During the course of the appeal, Mother and Child remained in Missouri. On March 13, 2001, the Missouri Court of Appeals held that Mother was never properly served. The Missouri Court of Appeals remanded the case to the trial court with instructions to dismiss the Missouri proceeding for lack of personal jurisdiction.

{4} On March 14, 2001, the day after the Missouri Court of Appeals issued its decision, Father filed a second petition for dissolution of marriage with the Circuit Court of St. Charles County. In his petition, Father requested that the court award him custody of Child. Later in the day, on Father's motion, the Missouri court entered an ex parte order and judgment awarding custody of Child to Father and restraining Mother from having custody of Child or removing Child from Missouri.

{5} On March 14, 2001, Child was picked up by Mother's sister to carry out a scheduled visitation with Mother. Before Father was able to serve Mother with the restraining order, Mother left Missouri with Child and returned to New Mexico. On March 19, 2001, Mother filed a petition for custody in the District Court of Grant County, New Mexico. On March 23, 2001, the Grant County district court entered an order granting custody of Child to Mother, *pendente lite.*

{6} On April 17, 2001, Father, through New Mexico counsel, filed a response to Mother's petition for custody. Father attached his affidavit stating that he had filed a petition for dissolution of marriage in Missouri on March 14, 2001, and that for fourteen months prior to March 14, 2001, Child had resided in the primary physical custody of Father in Missouri. Father also attached copies of the second Missouri petition for dissolution of marriage and the March 14, 2001 order of the Missouri court granting Father custody of Child.

{7} On May 1, 2001, the Grant County court entered an order determining that it had jurisdiction to determine custody of Child. The court reasoned that as the result of the Missouri Court of Appeals' decision remanding the case with instructions to dismiss Father's first petition, any orders previously entered by the Missouri court were "of no effect." The court found that the only reason Mother had returned to Missouri with

Child in November 1999 was in obedience to the Missouri court's "void" order. The court therefore declined to consider Child's presence in Missouri during the period from November 1999 to March 2001 in deciding whether Missouri or New Mexico was Child's home state. The court concluded that New Mexico was Child's home state.

{8} On June 29, 2001, the Missouri court entered a judgment and order determining that Missouri is the home state of Child and that Missouri "is the appropriate and convenient forum to adjudicate issues of child custody, visitation, [and] child support of [Child]." The court directed that a copy of the judgment and order be transmitted to the Grant County district court. On July 24, 2001, Mother filed a motion to set aside the June 29, 2001 judgment and order. On August 31, 2001, the Missouri court held a hearing on Mother's motion. On October 10, 2001, the Missouri court entered a judgment affirming its June 29, 2001 judgment and denying Mother's motion.

{9} On January 4, 2002, the Grant County district court entered a decision affirming its earlier rulings that New Mexico was Child's home state and that New Mexico, not Missouri, had jurisdiction to determine custody. On January 22, 2002, the Grant County district court entered a judgment conforming to its January 4 decision. On February 5, 2002, Father filed an application for interlocutory review. We granted Father's application on February 19, 2002.

## DISCUSSION

■ {10} In reviewing a trial court's determination of jurisdiction under the New Mexico Child Custody Jurisdiction Act, NMSA 1978, §§ 40–10–1 to –24 (1981, repealed by 2001 N.M. Laws, ch. 114, § 404) (the CCJA), we apply deferential substantial evidence review to the trial court's findings of historical fact; we review de novo the trial court's application of the law to the facts so found. *Barnae v. Barnae*, 1997–NMCA–077, ¶ 11, 123 N.M. 583, 943 P.2d 1036. Although the CCJA has been superceded by the Uniform Child Custody Jurisdiction and Enforcement Act, NMSA 1978, §§ 40–10A–101 to –403 (2001) (the UCCJEA), the UCCJEA provides that "[a] motion or other request for

relief made in a child-custody proceeding or to enforce a child-custody determination which was commenced before the effective date of the [UCCJEA] is governed by the law in effect at the time the motion or other request was made." Section 40–10A–403. We therefore apply the CCJA in deciding this appeal.

{11} As we explain below, the Grant County district court erred in not deferring to the jurisdiction of the Missouri court. Under the CCJA

> [a] district court of New Mexico shall not exercise its jurisdiction under the [CCJA] if at the time of filing the petition a proceeding concerning the custody of the same child was pending in a court of another state exercising jurisdiction substantially in conformity with the [CCJA], unless the proceeding is stayed by the court of the other state because New Mexico is a more appropriate forum, or for other reasons.

Section 40–10–7(A). The CCJA further provides that

> [i]f the district court is informed during the course of the proceeding that a proceeding concerning the custody of the child was pending in another state before the New Mexico district court assumed jurisdiction, the court shall stay the proceeding and communicate with the court in which the other proceeding is pending to the end that the issue may be litigated in the more appropriate forum and that information be exchanged in accordance with Sections 20 through 23 [40–10–20 to 40–10–23 NMSA 1978] of the [CCJA].

Section 40–10–7(C).

■ {12} In applying these provisions, the first question we must answer is whether Father's second Missouri petition was pending when the Grant County district court exercised jurisdiction under the CCJA. There is no dispute that Father filed his second petition on March 14, 2001, and that the Missouri court had entered an ex parte order awarding Father custody prior to Mother's institution of custody proceedings in New Mexico on March 19, 2001.

{13} The CCJA does not define "pending." The Grant County district court appears to have assumed that the critical date for purposes of Section 40–10–7(A) is the date that process is served on the respondent. In *Elder v. Park*, 104 N.M. 163, 168, 717 P.2d 1132, 1137 (Ct.App.1986), we held that where a custody petition had been filed in New Hampshire and the New Hampshire court had entered a temporary ex parte custody order prior to the filing of the competing New Mexico custody proceeding, the New Hampshire proceeding was pending as of date the New Mexico proceeding was commenced. Applying *Elder*, we hold that Father's petition was pending when Mother filed her petition in the Grant County district court.

{14} We next consider whether the Missouri court was exercising jurisdiction substantially in conformity with the CCJA. The CCJA provides that:

A district court of [this state] which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial decree or modification decree ... if:

(1) [This state]:

(a) is the home state of the child at the time of commencement of the proceeding; or

(b) had been the child's home state within six months before commencement of the proceeding and the child is absent from [this state] ... for any other reasons, and a parent or person acting as parent continues to live in [this state][.]

Section 40–10–4(A)(1)(a)(b). The CCJA defines home state as "the state in which the child, immediately preceding the time involved, lived with his parents, a parent or a person acting as a parent for at least six consecutive months...." Section 40–10–3(E).

{15} The undisputed facts establish that Child and Mother lived in Missouri from November 1999 until March 14, 2001, the date that Mother left Missouri with Child and returned to New Mexico. The Missouri court concluded that Missouri was Child's home state and that Missouri was the appropriate state to determine custody of Child.

On the same facts, the Grant County district court nonetheless concluded that New Mexico was Child's home. The Grant County district court reached this conclusion by refusing to consider Child's and Mother's presence in Missouri during the period November 1999 to March 14, 2001 in determining whether Missouri was Child's home state. The Grant County district court explained its ruling as follows:

4. In this case as the Court read the decision from the Appellate Court of Missouri, which said there was no jurisdiction, therefore whatever orders that have been entered in Missouri were of no effect. Based on the testimony at the hearing held for the purpose of determining jurisdiction, the only reason that [Mother] was in Missouri from November, 1999 until she returned to New Mexico in March, 2001 was because she had been ordered by the [Missouri] Court to be there. Otherwise, [Mother] would have still been in New Mexico.

5. That being the case, the Court believes New Mexico was the home state of the child and jurisdiction rested in New Mexico before [Mother] went to Missouri.

6. Anything that happened since then is void, therefore the child's home state is New Mexico.

{16} The Grant County district court erred as a matter of law in excluding the period November 1999 to March 2001 in determining the Child's home state. In our view the Legislature used the word "lived," rather than "resided," or "was domiciled," precisely to avoid complicating the determination of a child's home state with inquiries into the states of mind of the child or the child's adult caretakers. By adopting a definition of home state that focuses on the historical fact of the child's physical presence in a jurisdiction, the Legislature intended to provide a "definite and certain test." Unif. Child Custody Jurisdiction Act, § 3, cmt. at 308, 9 U.L.A., part IA (1999). Because Child and Mother in fact lived in Missouri during the period November 1999 to March 2001, the Missouri court was "exercising jurisdiction substantially in conformity with the [CCJA]" when it included the period November 1999 to March 2001

in determining that Missouri was Child's home state.

{17} Having learned of the pending Missouri proceedings, the Grant County district court was required to stay its own proceedings and communicate with the Missouri court. Section 40–10–7(C). However, unless and until the Missouri court declined to exercise jurisdiction on the ground that "New Mexico is a more appropriate forum, or for other reasons," the Grant County district court was prohibited by Section 40–10–7(A) from any further exercise of jurisdiction. *See also* 28 U.S.C. § 1738A(g)(2000). The record establishes that far from declining to exercise jurisdiction, the Missouri court proceeded to exercise its home state jurisdiction to determine custody of Child. In view of the pendency of prior Missouri proceeding in which a Missouri court was exercising custody jurisdiction substantially in conformity with the CCJA, the Grant County district court lacked jurisdiction to determine custody of Child.

## CONCLUSION

{18} The orders of the Grant County district court determining custody of Child are reversed. The Grant County district court is directed to stay further proceedings relating to the custody of Child until such time as the Circuit Court of St. Charles County, Missouri declines jurisdiction or is ordered by a Missouri appellate court to relinquish jurisdiction.

{19} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER and IRA ROBINSON, Judges.